GENERAL ELECTRIC CAPITAL AUTO FINANCIAL LEASING SERVICES, INC. (Formerly G.E.C. Auto Lease), Appellant,

v.

Stephen R. STANFIELD, Rhonda Stanfied, Lee Dale Wallace and Lisa Wallace, Appellees.

No. 12–00–00367–CV.

Court of Appeals of Texas, Tyler.

July 11, 2001.

Rehearing Overruled Aug. 13, 2001.

---

Charles J. Pignuolo, Devlin & Pignuolo, P.C., Ileana M. Blanco, Houston, for appellant.

Ron L. Adkison, Wellborn, Houston, Adkison, Mann, Sadler & Hill, L.L.P., Henderson, for appellee.

Panel consisted of DAVIS, C.J., WORTHEN and GRIFFITH, JJ.

DAVIS, Chief Justice.

General Electric Capital Auto Financial Leasing Services, Inc. (formerly G.E.C. Auto Lease) ("G.E.Capital") appeals a post-answer default judgment rendered against it. The trial court awarded actual damages and attorney's fees in favor of Appellees, Stephen R. Stanfield, Rhonda Stanfield (the "Stanfields"), Lee Dale Wallace and Lisa Wallace (the "Wallaces") (collectively "Appellees"). G.E. Capital raises two issues on appeal. We reverse and remand for a new trial.

## BACKGROUND

The Stanfields entered into an automobile lease agreement with G.E. Capital's predecessor in interest, Auto Flex Leasing. Subsequently, the lease was assigned by Auto Flex Leasing to G.E. Capital. The Stanfields sued alleging that certain misrepresentations were made in conjunction with their signing of the lease. Raising similar contentions, the Wallaces subsequently intervened. Appellees requested that the case be set for jury trial. The trial court sent notice that docket call was set for September 15, 1997. Shortly thereafter, the trial court sent out two other notices of docket call, each of which announced a later date than the preceding notice. The second notice set docket call for October 3, 1997, while the third notice set docket call for October 14, 1997. On September 15, 1997, Appellees appeared in the trial court in accordance with the first notice, but G.E. Capital did not appear. The case was withdrawn from the jury docket and the trial court rendered a default judgment against G.E. Capital. The next day, the trial judge sent a signed letter to the attorneys for both parties on court letterhead (the "September 16 letter"). The letter set forth the cause number and style of the case in the reference line and stated:

The above referenced case was called for trial. Plaintiff announced ready. No announcement from Defendant. Plaintiff withdrew the case from the

jury docket. The Court granted a default judgment and awarded damages to the Stanfields in the amount of $56,333.00 and attorney's fees of $18,500.00. The Wallaces were awarded $58,507.00 and attorney's fees of $19,300.00.

Within 30 days from the date of the trial judge's letter, G.E. Capital filed a motion for new trial, which asserted that the default judgment should be set aside in accordance with the standards set forth in *Craddock v. Sunshine Bus Lines,* 134 Tex. 388, 133 S.W.2d 124 (Tex. Comm'n App.— 1939, no writ). G.E. Capital specifically asserted that its counsel's failure to attend the hearing was the result of a mistake. It argued that the first notice was placed into another file by a temporary legal clerk substituting for the usual legal assistant, who was on medical leave. G.E. Capital further argued that it believed that each subsequent notice superceded the notice preceding it. G.E. Capital further urged that it had a meritorious defense that as assignee of the lease, it was not liable for representations made by its predecessor. Subsequently, during a telephone call by which G.E. Capital's attorney was attempting to set its motion for hearing, the trial court clerk represented to the attorney that a judgment had not yet been signed and therefore, that G.E. Capital's motion for new trial was premature. Appellees' attorney furthered this notion by letter dated December 9, 1997, in which he stated that he had contacted the court coordinator and had confirmed that, as of that date, no judgment had been signed. No further action was taken by either party for the rest of 1997, 1998, 1999 or the first six months of 2000.

In June 2000, the trial court set the case on the dismissal docket for want of prosecution and scheduled a hearing on the matter for August 28, 2000. Appellees for the first time took the position that the September 16, 1997 letter was a final judgment which had been rendered and signed. G.E. Capital responded with a supplemental motion for new trial re-urging the arguments of its previous motion for new trial. The matter was set for hearing. Following the hearing, the trial judge sent a letter to the parties' attorneys dated November 14, 2000, in which he stated that G.E. Capital's motion for new trial was overruled and requesting that Appellees' counsel draft a corresponding order, which was signed and entered on December 15, 2000. G.E. Capital filed its notice of appeal on November 17, 2000.

### SEPTEMBER 16 LETTER

■ A judgment routinely goes through three stages: (1) rendition, (2) signing, and (3) entry. *See In re Wilburn,* 18 S.W.3d 837, 840 (Tex.App.—Tyler 2000, no pet.). The judgment becomes effective once it is "rendered." *Id.* at 840–41. However, the timetables for appeal do not begin to run until the judgment is reduced to writing and signed by the court. *See* TEX.R. CIV. P. 306a(1); *see also Burrell v. Cornelius,* 570 S.W.2d 382, 384 (Tex.1978). As such, while the entry of the judgment is required by Rule 306a(1)[1], the date of "entry" is not the relevant issue in the instant case because it does not relate to when the appellate timetables begin to run. *Id.*

■ It has been held that a letter from the trial judge can constitute a judgment if the letter satisfies the requirements of a valid final judgment. *See, e.g., Schaeffer Homes, Inc. v. Esterak,* 792 S.W.2d 567,

---

1. Ultimately, the September 16 letter was attached to the trial court's December 15, 2000 order and entered of record.

568–69 (Tex.App.—El Paso 1990, no writ) (letter stating "motion for new trial is granted," constituted valid order); *see also Champion International Corporation v. Twelfth Court of Appeals,* 762 S.W.2d 898, 899 (Tex.1988) (letter order granting a mistrial held valid); *Mixon v. Moye,* 860 S.W.2d 209, 210 (Tex.App.—Texarkana 1993, no writ) (letter to counsel may constitute judgment if it is in sufficient detail to state the court's decision on all the matters at issue and is filed with the clerk), *citing Comet Aluminum Co. v. Dibrell,* 450 S.W.2d 56 (Tex.1970) *and Abarca v. Roadstar Corp. of America,* 647 S.W.2d 327 (Tex.App.—Corpus Christi 1982, no writ); *but see Goff v. Tuchscherer,* 627 S.W.2d 397, 398 (Tex.1982) (holding that letter was not an appealable order because language requesting counsel to submit a draft of a final order demonstrated trial judge did not presently intend letter to be final order). In determining the validity of a judgment, "the substance of the judgment and not the form controls and no particular wording or phraseology is required." *Commissioners' Court of Tarrant County v. Emerson,* 441 S.W.2d 889, 897 (Tex.Civ.App.—Fort Worth 1969, writ ref'd n.r.e.).

The *Goff* case is helpful to our analysis. In *Goff,* the Texas Supreme Court held a letter to be insufficient to constitute a judgment. The Court stated: "Rule 306a . . . and other related rules were adopted for the purpose of making more definite the time from which an appeal had to be perfected." *See Goff,* 627 S.W.2d at 398. The Court continued, "Letters to counsel are not the kind of documents that constitute a judgment, decision or order from which an appeal may be taken." *Id.* at 398–99. The basis for the Court's decision was language in the letter calling on counsel to submit a draft of a final order. *Id.* at 398. This language, the Court noted, demonstrated that the letter was not *in-*

*tended* as an appealable order. *Id.* (emphasis added). Thus, the focal point of our analysis will be whether the trial judge, at the time he signed the September 16 letter, *intended* that it be a final appealable order.

■ The record contains several indications that the September 16 letter was not intended, at the time of its signing, to be a final judgment. The record reveals that while G.E. Capital was attempting to set is motion for new trial for hearing, the trial court clerk represented to G.E. Capital that a judgment had not yet been signed and therefore, that G.E. Capital's motion for new trial was premature. The trial court clerk's statement was subsequently confirmed by a letter from Appellees' counsel to G.E. Capital's counsel dated December 9, 1997, in which he states:

> This will confirm that with your permission I have discussed your setting with Judge Gossett's court coordinator and have been able to confirm that a judgment has not been signed in this case. Therefore your motion for new trial is premature.
>
> . . .
>
> This will further confirm that . . . , if and when the Court signs the judgment in this case, your motion for new trial will then be deemed timely filed at that time so that you do not need to refile your motion for new trial. The Court will send you a copy of any judgment he signs in this matter.

Both of these representations are strong indications that no one, including the trial judge, regarded the September 16 letter as a judgment. While rendition of default judgment appears on the trial court's docket sheet, the docket sheet makes no reference to the September 16 letter whatsoever further evidencing a lack of intent that it was a final judgment. Further if

the September 16 letter was intended to be a final judgment, it does not logically follow that the case would have been set on the court's dismissal docket for want of prosecution.

To the contrary, these circumstances indicate that the letter was intended to be nothing more than an announcement that a default judgment had been rendered against G.E. Capital. Neither G.E. Capital, nor its counsel were present when the trial judge orally rendered judgment on September 15 and would have had no knowledge of the rendition except for receipt of the letter. Moreover, the language used in the September 16 letter supports the conclusion that the letter was merely an announcement, not a final judgment. In the letter, the trial judge states, "The Court granted a default judgment and awarded damages[.]" The letter was written in the past tense, and contained no language indicating that the trial judge intended the letter to be a signed, final judgment. Thus, we conclude that the September 16 letter was not a final judgment.[2] G.E. Capital's first issue is sustained.[3]

### MOTION FOR NEW TRIAL UNDER THE CRADDOCK STANDARD

In its second issue, G.E. Capital argues that the denial of its motion for new trial was improper. A trial court's decision to deny a motion for new trial is reviewed for abuse of discretion. *See Director, State Employees Workers' Compensation Div. v. Evans*, 889 S.W.2d 266, 270–71 (Tex.1994). G.E. Capital's motion for new trial argues that the trial court improperly granted a default judgment. A default judgment should be set aside and a new trial ordered in any case in which (1) the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, (2) but was due to a mistake or an accident, (3) provided the motion for a new trial sets up a meritorious defense, and (4) is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff. *See Craddock v. Sunshine Bus Lines*, 133 S.W.2d at 126; *see also Cliff v. Huggins*, 724 S.W.2d 778, 779 (Tex.1987) (the prerequisites for granting a motion to set aside a trial court's default judgment also apply to a post-answer default judgment). The law prefers that cases be disposed on their merits wherever possible, rather than by default. *See Reed v. City of Dallas*, 774 S.W.2d 384, 386 (Tex.App.—Dallas 1989, writ denied). The defendant is not required to *prove* a meritorious defense; the defendant is merely required to *set up* a meritorious defense. *See Evans*, 889 S.W.2d at 270. Further, the defendant should state that it is ready for trial and willing to reimburse the plaintiff for all reasonable expenses incurred in getting the default. *Id.* at 270 n. 3. However, failure to offer reimbursement does not necessarily preclude a new trial. *See G & C Packing Co. v. Commander*, 932 S.W.2d 525, 529 (Tex.App.—Tyler 1995, writ denied). Once the defendant alleges the granting of the motion will not cause delay or prejudice, the burden

---

**2.** G.E. Capital contends that the representations by Appellee's counsel and the trial court clerk amount to either judicial or equitable estoppel. However, since we have sustained G.E. Capital's first issue based on the trial judge's intent, we need not address the issue of estoppel.

**3.** Noting that the trial court's order of December 15, 2000 did express its intent, as of that date, that the September 16 letter be a final judgment, we conclude that the trial court entered a signed, final judgment on December 15, 2000. Appellant filed its notice of appeal on November 17, 2000, which in accordance with Texas Rule of Appellate Procedure 27.1(a), was timely.

shifts to the plaintiff to prove injury. *See Evans*, 889 S.W.2d at 270.

■ In the case at hand, G.E. Capital alleges that its failure to appear at trial was based on a mistake. It claims it had no notice of the docket call because the notice was placed in the incorrect file by a temporary legal clerk while its attorney's usual legal assistant was on medical leave. G.E. Capital further contends that the two subsequent notices, each stating that docket call was set for a later date, caused it to believe that the September 15 notice was thereby superceded. Appellees do not make any argument in their brief that contradicts G.E. Capital's contention that it's failure to appear was the result of a mistake. Appellees' response and supplemental response to G.E. Capital's motion for new trial is likewise silent on this issue. Therefore, we conclude that G.E. Capital's affidavit filed in support of its motion for new trial was sufficient to support its uncontradicted contentions that its failure to appear was the result of a mistake.

■ G.E. Capital further contends that its motion for new trial also set up a meritorious defense. In its motion for new trial, G.E. Capital argued that as assignee of the lease at issue, it could not be responsible for any misrepresentations by assignor, Auto Flex Leasing. G.E. Capital further denied that Auto Flex Leasing was its agent. Although both Appellees' brief and their response to G.E. Capital's motion for new trial were silent as to this issue, at oral argument, Appellees contended that certain evidence of record tended to contradict G.E. Capital's defense. However, a meritorious defense is one that, *if proven*, would cause a different result on retrial of the case. *See Miller v. Miller*, 903 S.W.2d 45, 48 (Tex.App.—Tyler 1995, no writ), *citing Moving Co. v. Whitten*, 717 S.W.2d 117 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.), *overruled on other grounds, Hines v. Hash*, 843 S.W.2d 464 (Tex.1992) (emphasis added). A party is not required to conclusively prove the truth of a meritorious defense before the party is entitled to a new trial. *Id.* The court should not deny the motion on the basis of any contradictory testimony that is offered by the opposing party. *See Miller*, 903 S.W.2d at 48, *citing Guaranty Bank v. Thompson*, 632 S.W.2d 338, 339 (Tex.1982). Accordingly, we conclude that G.E. Capital set up a meritorious defense in its motion for new trial.

Finally, in its motion for new trial, G.E. Capital stated that it had offered to pay Appellees' expenses in obtaining the default judgment as evidenced by a letter to Appellees' attorney. G.E. Capital further stated that it was ready to proceed to trial on the merits. Moreover, G.E. Capital pointed out the fact that Appellees had not, for three years following their receipt of the September 16 letter, attempted to execute on the purported judgment and thus, any further delay occasioned by a new trial would not prejudice Appellees' rights. Once G.E. Capital alleged that granting its motion would not cause delay or prejudice, the burden shifted to the Appellees to prove injury. *See Evans*, 889 S.W.2d at 270. Appellees have made no contention on appeal that their rights will be prejudiced by a new trial. Appellees' response and supplemental response to G.E. Capital's motion for new trial is likewise silent as to any undue delay or prejudice they might suffer as the result of a new trial. Thus, Appellees have not met their burden of showing injury in response to G.E. Capital's motion for new trial.

Since G.E. Capital satisfied the requirements as set froth in *Craddock*, we conclude that the trial court, by refusing to grant a new trial, abused its discretion, as is outlined by *Craddock*. G.E. Capital's second issue is sustained.

Accordingly, the judgment of the trial court is *reversed* and the case is *remanded* for a new trial.